UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

       Plaintiff,

                              CASE NO. 03-81083
v.                             JUDGE VICTORIA A. ROBERTS
                              MAGISTRATE JUDGE PAUL KOMIVES

JEREMY MacFARLANE, MARTIN
HERMIZ, PETER GIRGIS, MOMTAZ
TAWFIK, and HANSEE SESI,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny defendant Sesi's motion *in limine* to

suppress evidence from trial (docket #57).

II.    <u>REPORT</u>:

A.    *Procedural Background*

       This criminal prosecution arises from the grand jury's two-count indictment returned on

December 4, 2003.  The indictment charges in Count I that each defendant, from on or before

February 5, 2002, until the date of the indictment, conspired to possess with the intent to distribute

more than 50 but less than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(C), 846.  Count II charges that each defendant, except for defendant Sesi, possessed with the

intent to distribute more than 50 but less than 100 kilograms of marijuana, in violation of 21 U.S.C.

§§ 841(a).

       The matter is currently before the Court on defendant Sesi's motion to *in limine* to suppress

1

evidence from trial, filed on December 8, 2006.  Defendant Sesi contends that evidence that he was discovered in possession of large amount of money at Detroit Metropolitan Airport is irrelevant under Rule 401 and, alternatively, that its probative value is outweighed by the danger of unfair prejudice under Rule 403.  The government filed a response on December 26, 2006.

B.    *Legal Standard*

Defendant contends that evidence of the airport search is not relevant under Rule 401, and that its probative value is substantially outweighed by the danger of unfair prejudice.  Under Rule 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401; *see also*, JEREMY BENTHAM, RATIONALE OF JUDICIAL EVIDENCE 17-18 (1827) (defining evidence as "any matter of fact, the effect, tendency, or design of which, when presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact:  A persuasion either affirmative or disaffirmative of its existence.").  Under Rule 402, except as otherwise provided by the Constitution, statutes, or other rules, relevant evidence, as defined in Rule 401, is admissible, and irrelevant evidence is not admissible.  FED. R. EVID. 402.  The threshold established by Rules 401 and 402 is not demanding.  Under the rules, an item of evidence that has any probative value, no matter how slight, is relevant and presumptively admissible. In Professor McCormick's famous formulation:

> An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. . . . It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. . . . A brick is not a wall.

JOHN W. STRONG, MCCORMICK ON EVIDENCE § 185 (5th ed. 1999).

Rule 403 provides that otherwise relevant evidence "may be excluded if its probative value

2

is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403 (emphasis added). As used in Rule 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee notes. Further, "[i]n reaching a decision to exclude on the grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." *Id.*; *see* FED. R. EVID. 105.

C.      *Analysis*

This case is based primarily on the fruits of a search of 11209 Glenis Street, in Sterling Heights, Michigan, on February 5, 2002. The search warrant affidavit was prepared by Sterling Heights Police Detective James Belmonte, and the warrant was issued by Judge Stephen S. Sierawski of the 41-A District Court. The affidavit was sworn on February 4, 2002. *See* Br. in Supp. of Def. MacFarlane's Mot. to Quash, Ex. 1 [hereinafter "Affidavit"]. The Affidavit describes the location to be searched, and describes the property to be searched for and, if found, seized, as "[c]ontrolled substances . . . specifically but not limited to marijuana," as well as any evidence of drug trafficking. As factual support for the existence of probable cause, Detective Belmonte averred that:

- On December 17, 2001, Sterling Heights Police Officer Tsouroullis seized trash bags located in front of the 11209 Glenis Street residence which "included miscellaneous packaging material indicative to illegal narcotics trafficking, and miscellaneous paperwork bearing the name of Jeremy Steven McFarlane [sic]."

- Defendant MacFarlane's residency was confirmed via a LEIN check, and a silver Cadillac belonging to defendant Sesi was observed in the driveway of the residence.

3

- Within the 30 days prior to the affidavit, defendant Sesi was stopped by federal law enforcement agents at Detroit Metropolitan Airport while attempting to board a flight to Arizona, a direct route for the transportation of marijuana to the Detroit area. At the time, defendant Sesi was in possession of a large quantity of cash, which was strapped to the inside of his legs.

- On January 15, 2002, Officer Tsouroullis seized trash left in front of the home, which included "a small amount of marijuana residue, stems, and seeds."

- On February 4, 2002, the date of the affidavit, Detective Belmonte seized trash from the curb in front of the residence. The trash included "marijuana residue, stems and seeds (positive field test for marijuana content).

- Further surveillance of defendant Sesi on that date yielded observations that defendant Sesi "was engaged in apparent narcotic trafficking in parking lots within the City of Sterling Heights."

- Surveillance of the residence "revealed numerous short-term vehicle traffic at all hours of the night."

- Surveillance and investigation also revealed that defendant "Sesi has routinely, with the access of a house key, entered and existed the residence at 11209 Glenis while the homeowner was away," and sometimes stayed the night. Defendant Sesi was also observed at his own home in Sterling Heights. According to Detective Belmonte, "[i]t is not uncommon for narcotics traffickers to routinely utilize several different residences to avoid detection[.]"

Defendant contends that the information relating to his detention at the airport and possession of a large amount of cash are not relevant to the conspiracy allegations involved in this case. Defendant Sesi argues that there is no evidence of illegal activity relating to the cash, nor is there any temporal connection between the cash and the search of the home over one month later. Further, defendant argues, there are no allegations relating to money having been discovered in the home, nor are there any allegations relating to travel. Finally, defendant argues, the evidence would be unduly prejudicial because "[t]his information, if permitted to be presented at trial, will more than likely lead members of a jury to improper and unsubstantiated conclusions, similar to the conclusions that the government has asserted." Def.'s Br., at 3-4.

4

The government disagrees, arguing that the evidence of the airport search is relevant for a number of reasons. Noting that this is a conspiracy case in which defendant Sesi's intent must be shown, the government argues that the airport search is relevant because it was the incident which set in motion the police activity–*i.e.*, surveillance of defendant Sesi–which ultimately led to the February 5, 2002, search. The government also argues that unexplained wealth is relevant to demonstrate that defendant is involved in the drug trade, and that the airport search and search warrant application are separated by only 18 days, and thus not temporally remote. Finally, the government argues that the evidence is not unfairly prejudicial. The Court should agree with the government, and should therefore deny defendant's motion.

Here, the evidence of the airport search and the quantity of cash found on defendant Sesi is relevant to the conspiracy charges in this case. Defendant Sesi is charged in Count I with conspiracy to possess with the intent to distribute marijuana. Evidence of other drug-related activity is therefore relevant to establish defendant's intent. "Financial aspects of drug trafficking represent an integral part of a conspiracy to distribute controlled substances," *United States v. Castro*, 908 F.2d 85, 88 (6th Cir. 1990), and "[i]t is well settled law that possession of large amounts of unexplained cash is evidence of narcotics trafficking activities." *United States v. Certain Real Property & Premises Known as 63-29 Trimble Road, Woodside, N.Y.*, 812 F. Supp. 335, 338 (E.D.N.Y. 1992); *see also*, *United States v. Okayfor*, 996 F.2d 116, 119-20 (6th Cir. 1993); *United States v. Collins*, 764 F.2d 647, 654 (9th Cir. 1985). Nor were the airport search and the execution of the search warrant so remote in time as to render the airport search irrelevant. Further, the evidence of the airport search, which was the impetus for further investigation of defendant and ultimately led to the search of the home, is relevant background information. *See United States v. Martinez*, 430 F.3d 317, 335 (6th

Cir. 2005); *United States v. Monsour*, 893 F.2d 126, 129 (6th Cir. 1990).

Nor can defendant establish that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Contrary to defendant's argument, the evidence is of more than slight probative value. *See Collins*, 764 F.2d at 654. Defendant has not identified any *unfair* prejudice which will result from the introduction of the evidence. While defendant argues that the jury may improperly infer that he was involved in a drug conspiracy based on the large amounts of cash he was carrying, this is a permissible inference of the evidence. As the Sixth Circuit has explained, "[u]nfair prejudice . . . does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Further, defendant has offered nothing to suggest that any danger of unfair prejudice cannot be limited by an appropriate instruction to the jury. Because defendant has failed to show a danger that the evidence is likely to lead to a decision on an improper basis, the Court should deny his motion *in limine*.

D.    *Conclusion*

In view of the foregoing, the Court should deny defendant Sesi's motion *in limine* to suppress evidence from trial.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/16/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 16, 2007.

s/Eddrey Butts
Case Manager